IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 6, 2018 Session

**WELLS FARGO BANK, N.A. v. WILLIAM S. LOCKETT, JR., ET AL.**

**Appeal from the Circuit Court for Knox County**
**No. 1-128-12          Kristi M. Davis, Judge**

———————————————————

**No. E2018-00129-COA-R3-CV**

———————————————————

The mortgagors sought to rescind the foreclosure sale of their property, claiming that the sale was invalid because it had been conducted improperly. A jury found the sale process was properly followed and the verdict was approved by the trial court. The mortgagors appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and NORMA MCGEE OGLE, S.J.,[1] joined.

William L. Moore, Jr., Gallatin, Tennessee, for the appellants, William Soaper Lockett, Jr., and Dawn Lockett.

Edmund S. Sauer and Jessica Jernigan-Johnson, Nashville, Tennessee, for the appellee, Wells Fargo Bank, N.A.-California.

**OPINION**

**I.      BACKGROUND**

This is the second appeal in this matter. We restate the background facts from the decision in the initial appeal:

William S. Lockett, Jr. and Dawn Lockett ("Mortgagors" [or

---

[1] Judge on the Court of Criminal Appeals sitting by special designation.

"Locketts"]) signed a promissory note evidencing a home loan in the amount of $163,200. The note was secured by a deed of trust. The note and deed of trust were assigned to Wells Fargo, N.A. ("Wells Fargo"), and Nationwide Trustee Services, Inc. ("Nationwide") was appointed as the substitute trustee.

In June 2011, Mortgagors fell behind on their mortgage payments. Nationwide mailed a notice of the right of foreclosure to Mortgagors.[2] Thereafter, Mortgagors received notice that the foreclosure sale was scheduled for October 27, 2011 at 11.00 a.m. The notice also contained the following provision:

> The right is reserved to adjourn the day of the sale to another day, time, and place certain without further publication, upon announcement at the time and place for the sale set forth above.

The sale was advertised in the *Knoxville Journal* on September 30, October 7, and October 14, 2011. On the day of the scheduled sale, Gene Mathis announced that the sale had been postponed. Mortgagors were not present on that day. Nationwide also mailed a notice of postponement that provided the new date of sale but failed to specify the time of the sale. Mortgagors somehow learned that the sale had been scheduled for 11:00 a.m. They arrived at the appointed time to learn that the property had been sole prior to the appointed time.

On January 24, 2012, Wells Fargo filed a detainer action against Mortgagors in the Knox County General Sessions Court. The case was removed to Knox County Circuit Court by agreement. Mortgagors responded to the detainer action by filing a counter-complaint, asserting that the foreclosure was wrongful because it occurred prior to 11:00 a.m. They claimed that they had procured a willing purchaser, who was denied the opportunity to bid on the property because the sale occurred prior to the appointed time. They requested damages and attorney fees, and argued that the sale should be rescinded because the foreclosure sale did not comply with

---

[2] Mortgagors claim that they never received the notice.

the terms contained in the deed of trust. Wells Fargo responded by denying any wrongdoing.

Wells Fargo also filed a motion for summary judgment, asserting that it was not responsible for any monetary damages because it lacked the right to control the persons or entities that scheduled and carried out the sale. Wells Fargo additionally asserted that Mortgagors were not entitled to obtain rescission of the sale pursuant to Tennessee law because Mortgagors received the notices required by the deed of trust. Mortgagors argued that genuine issues of material fact remained, namely whether the foreclosure sale was actually held at the appointed time. Following a hearing, the trial court granted the motion for summary judgment, in part, holding that Mortgagors were not entitled to rescission of the sale pursuant to Tennessee law even if the sale occurred prior to the scheduled time. The court held that the claim could proceed on the issue of damages. Mortgagors subsequently voluntarily dismissed their claim for damages. . . .

After a timely appeal, we reversed the judgment of the trial court and remanded the case for further proceedings, stating as follows:

Failure to conduct the foreclosure sale "at the time and under the terms designated in the notice of sale" would be a violation of the terms contained in the deed of trust. Questions remain as to whether the foreclosure sale was held "at the time and under the terms designated in the notice of sale." Accordingly, we conclude that the trial court erred in dismissing the complaint at this point in the proceedings because material questions of fact remained. In so concluding, we express no opinion as to whether the foreclosure sale was held "at the time and under the terms designated in the notice of sale."

The trial after the remand was held on August 8, 2017. In addition to the facts noted above, the jury heard from Gene Mathis, who testified that he conducted the foreclosure sale of Mortgagors' home on November 22, 2011. He related that on the day of a sale, he typically would go to the entryway that "comes off of Main Street, which is the covered walkway, at the far end of the walkway . . . in front of the Large and Small Assembly rooms . . . [a]nd that is where [he] would cry the sale on the given date at 11 o'clock." Mr. Mathis observed that "it was established . . . that all sales would be conducted at 11 o'clock . . . in Knox County." He identified an invoice reflecting

- 3 -

payment for crying out the sale at issue. On cross-examination, Mr. Mathis admitted that he did not remember "one single thing" about the day of the foreclosure sale on November 22, 2011. He further testified that it is his habit and custom to keep certain records of every foreclosure he conducts. According to Mr. Mathis, one of the documents he used has a signature line for an independent witness not connected with the sale to verify the date and time of the sale. After a foreclosure, Mr. Mathis noted that he would send these records to Bendun, one of the companies that retained him to conduct foreclosures. Unfortunately, the records for two days could not be located: October 27, 2011, the first day Locketts' foreclosure was scheduled, and November 22, 2011, the day of the actual foreclosure sale. Despite Mathis testifying that he always faxed the records to Bendun, it appears that Bendun did not receive the records for October 27 and November 22, 2011.

Prior to the commencement of the trial, the court heard arguments on a motion *in limine* to prohibit any mention of how much time has passed since Mortgagors last made a payment to Wells Fargo.

Judgment was entered on August 18, 2017 in favor of Wells Fargo, after the jury found that Wells Fargo's agent "conducted the foreclosure sale at the time and under the terms designated in the notice of sale." Mortgagors timely filed a motion for a new trial on September 18, 2017. By order dated December 18, 2017, the trial court denied Locketts' motion for new trial, stating "there was sufficient evidence to support the jury's verdict." Locketts filed a notice of appeal on January 16, 2018.

## I.     ISSUES

On appeal, Mortgagors raise two issues:

> (a)     The trial court erred in its performance of the thirteenth juror rule by failing to independently weigh the evidence and express satisfaction that the jury reached the correct decision;

> (b)     Wells Fargo's counsel's intentional violation of a pretrial order *in limine* prejudiced the jury pool and required a new trial.

## II.     STANDARD OF REVIEW

In this state the trial judge is the thirteenth juror. No verdict is valid until approved by the trial judge. *Mize v. Skeen*, 468 S.W.2d 733, 736 (Tenn. Ct. App. 1971). "In this capacity the trial court is under a duty to independently weigh the evidence and

determine whether the evidence preponderates in favor of or against the verdict." *Shivers v. Ramsey*, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996) (citing *McLaughlin v. Broyles*, 255 S.W.2d 1020, 1023 (Tenn. Ct. App. 1952); *Tiffany v. Shipley*, 161 S.W.2d 373, 376 (Tenn. Ct. App. 1941)). In *Cumberland Telephone & Telegraph Co. v. Smithwick*, 79 S.W.2d 803, 804 (Tenn. 1904), the Tennessee Supreme Court described the rule as follows:

> [T]his is one of the functions the circuit judge possesses and should exercise – as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence; and, if he is dissatisfied with the verdict of the jury, he should set it aside.

*Id.* at 804. When assessing whether a trial court adequately fulfilled its duties as the thirteenth juror, appellate courts review the statements or reasons that were given by the trial court for denying the motion for new trial. *Holden v. Rannick*, 682 S.W.2d 903, 906 (Tenn. 1984). If the trial court denies the motion without comment, appellate courts will presume that the court adequately performed its function as the thirteenth juror. *Id.; Centr. Truckaway Sys. v. Waltner*, 253 S.W.2d 985, 991 (Tenn. Ct. App. 1952). If the trial court gives reasons for denying the motion for new trial, appellate courts will consider them only to see if the trial judge reviewed the evidence and was satisfied with the verdict. *Holden*, 682 S.W.2d at 906. An appellate court will reverse only if it appears from the record that the trial judge was not satisfied with the verdict or misconceived its role as the thirteenth juror. *James E. Strates Shows, Inc. v. Jakobik*, 554 S.W.2d 613, 615 (Tenn. 1977).

A trial court is given wide discretion in granting or denying a motion for a new trial. *Loeffler v. Kjellgren*, 884 S.W.2d 463, 468 (Tenn. Ct. App. 1994). A reviewing court will not overturn the trial court's decision unless there has been an abuse of that discretion. *Id.* (citing *Mize*, 468 S.W.2d at 736). In reviewing a court's decision to deny a motion for a new trial on the grounds of improper conduct by counsel, an appellate court will not overturn a trial court's decision unless "the argument is clearly unwarranted . . . or unless the appellate court finds affirmatively that the arguments or statements affected the result of the trial." *Perkins v. Sadler*, 826 S.W.2d 439, 442 (Tenn. Ct. App. 1991) (citations omitted); *see, e.g., Pullman Co. v. Pennock*, 102 S.W.73 (Tenn. 1907).

## III. DISCUSSION

### A.

Mortgagors do not challenge the jury's factual finding that the property was sold

at the scheduled time. They instead argue that the trial court failed to perform its duty to independently weigh the evidence as the thirteenth juror.

In performing the function of a thirteenth juror, the trial court must not defer to the jury. In *Bellamy v. Cracker Barrel Old Country Store, Inc*., No. M2008-00294-COA-R3-CV, 2008 WL 5424015 (Tenn. Ct. App. 2008), *vacated on other grounds* 302 S.W.3d 278 (2009), we delivered a lengthy exposition on the proper application of the thirteenth juror rule. The court stated as follows:

> Before approving a verdict, a trial judge must always weigh the evidence and determine that the evidence preponderates in favor of the verdict, such that the trial judge is "independently satisfied" with the verdict. *Mabey*[*v. Maggas*], [No. M2006-02689-COA-R3-CV,] 2007 WL 2713726, at *6 [(Tenn. Ct. App. Sept. 18, 2007)] (citing *Holden*, 682 S.W.2d at 906). However, the trial judge is not required to expose his mental processes in exercising his role as thirteenth juror. "In deciding [a motion for a new trial], the . . . judge is not bound to give any reasons, any more than the jury itself is bound to do so." *Wakefield* [*v. Baxter*], 297 S.W.2d [97, ] 99 [(Tenn. Ct. App.1956)]. He is not required to "make an express statement that the preponderance of the evidence supported the verdict. . . ."

*Bellamy*, 2008 WL 5424015, at *3.

As noted by Mortgagors, to properly perform the duty of the thirteenth juror, the trial court must weigh the evidence and apply the law thereto, in order to independently satisfy itself that the jury reached the proper outcome. As our Supreme Court explained in *Cumberland Telephone & Telegraph Co.*:

> The reasons given for [the thirteenth juror rule] are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, in the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court . . . .

79 S.W. at 804.

Mortgagors assert that we must find that the trial court did not independently assess the weight of the evidence and express agreement with the jury. Instead, by stating only that "there was sufficient evidence to support the jury's verdict," Mortgagors argue that the trial court simply deferred to the jury. They contend that the court failed to indicate there was an independent weighing of the evidence and agreement with the jury's verdict after having done so. *See Cooper v. Tabb*, 347 S.W.3d 207, 220 (Tenn. Ct. App. 2010).

Appellate courts will not reverse a trial court for simply commenting on the motion for a new trial; a remand is only warranted if the comments "indicate he has misconceived his duty or clearly not followed it." *Heath v. Memphis Radiological Prof'l Corp.*, 79 S.W.3d 550, 554 (Tenn. Ct. App. 2001). In this case, the trial court held that "there was sufficient evidence to support the jury's verdict." In our view, this statement does not indicate that the court failed to adequately perform an independent evaluation of the evidence or that it impermissibly deferred to the jury.

In *Washington v. 822 Corp.*, 43 S.W.3d 491 (Tenn. Ct. App. 2000), the trial court denied a motion for new trial, finding that "[i]t appears to the Court now that the jury verdict in this cause is supported by sufficient evidence and therefore should not be disturbed." *Id.* at 494. On appeal, the appellant argued that this language indicated the trial court deferred to the jury without making an independent evaluation of the evidence. *Id.* We rejected that argument, finding that this language "does not indicate that the trial judge did not perform her duty as the 'thirteenth juror.'" *Id.* at 495. Similarly, the language before us does not indicate that the court failed to independently weigh the evidence. Accordingly, we affirm the trial court's judgment.

**B.**

The record reveals that Wells Fargo filed a memorandum of law in which it argued that the only issue to be tried was "whether the scheduled foreclosure sale was held at the appointed time of 11:00 a.m." Locketts expressed their agreement that this was the sole issue to be heard. Mortgagors subsequently filed a motion in limine requesting that the trial court order that Wells Fargo not be allowed to mention how long it had been since payments on the mortgage were last made by Locketts. The court granted the motion. Mortgagors contend that counsel for Wells Fargo subsequently violated the order in the presence of the entire pool of jurors. They assert that this action should result in a new trial.

At issue is the following exchange between Wells Fargo's counsel and a prospective juror:

> MR. LIEBER: Okay. Do you think that you could be a juror

> knowing that someone didn't pay something *for a significant amount of time?*
>
> POTENTIAL JUROR BARRETT: Yeah.
>
> MR. LIEBER: Even if it was *years*?
>
> MR. MOORE: Your Honor, may we approach?

Mortgagors argue that the first *voir dire* question quoted above, about someone not paying for "a significant amount of time" was, by itself, a violation of the court's order. They assert that the second question, about not making payments "for years," was a deliberate attempt to prejudice the entire jury pool against Locketts. Arguing that it is impossible to measure the impact of the questions on the jury, Mortgagors contend that the only cure is to order a new trial.

When the questions occurred, the court observed that Locketts' failure to make payments prior to the Notice of Foreclosure had been stipulated to and informed counsel that "we probably don't need to get into that." Counsel for Wells Fargo did not ask any other questions regarding missed mortgage payments during *voir dire*. When Locketts moved for a new trial on the grounds that counsel had violated the court's order, the trial court denied the motion, holding that while the "spirit" of the order had been violated, the violation did not adversely affect the outcome of the trial. In the order denying Mortgagors' motion for a new trial on this issue, the trial court held as follows: "[T]he Court finds that although the statements made by counsel during *voir dire* may not have violated the *letter* of the Court's Order (*in limine*), these statements did violate the *spirit* of the Order and were improper. However, the Court finds that the statements made by Plaintiff's counsel did not adversely affect the outcome of the trial."

We find that the trial court acted well within its discretion when it found that the challenged questions, even if improper, were harmless, particularly given the other evidence stipulated to and properly introduced at trial. The jury was well aware that Locketts had not made their mortgage payments and that the property was subject to a foreclosure sale. These facts were stipulated to by the parties before the trial began. The jury was also informed that the parties had stipulated to the fact that Mortgagors failed to make timely payments to Wells Fargo and that Wells Fargo was authorized to begin the foreclosure process. The jury also heard evidence and reviewed trial exhibits revealing that Locketts were in default on their mortgage. The Notice of Substitute Trustee's Sale, which was admitted into evidence, stated that the loan was in default. Additionally, Mrs. Smith testified that she went to the foreclosure sale intending to purchase Locketts' house. As noted by Wells Fargo, throughout the trial, the jury heard that Locketts failed to make payments, that their loan was in default, and that a foreclosure sale was going to occur. Given all of this evidence, the trial court did not abuse its discretion when it

concluded that counsel's comments during *voir dire* alluding to the missed mortgage payments did not adversely affect the outcome of the trial. From the totality of the circumstances, we cannot conclude that the questions, when viewed in context and in light of the entire record, rise to the level of reversible error. The cases cited by Mortgagor do not compel a different result.

## V.     CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellants, William S. Lockett and Dawn Lockett.

_____
JOHN W. MCCLARTY, JUDGE